IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CT-3139-D

| | | |
|---|---|---|
| MICHAEL A. WILLIAMS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | **ORDER** |
| G.J. BRANKER, et al., | ) ) ) | |
| Defendants. | ) ) | |

On August 12, 2009, Michael A. Williams ("Williams" or "plaintiff"), a state inmate incarcerated at Central Prison, filed this action pursuant to 42 U.S.C. § 1983 [D.E. 1]. Williams proceeds in forma pauperis [D.E. 2]. On December 31, 2009, the court reviewed the complaint and allowed the action to proceed [D.E. 8]. On January 19, 2010, the court directed North Carolina Prisoner Legal Services ("NCPLS") to investigate plaintiff's claims [D.E. 12]. On April 19, 2010, NCPLS entered a notice of appearance as counsel for plaintiff [D.E. 19]. On May 14, 2010, upon leave of court, NCPLS filed a third amended complaint [D.E. 25].

On June 28, 2010, all defendants answered the complaint [D.E. 27]. On July 16, 2010, defendants filed a motion for judgment on the pleadings [D.E. 28]. On August 5, 2010, Williams responded in opposition [D.E. 30]. On August 16, 2010, defendants filed a reply [D.E. 31]. As explained below, the court grants the motion for judgment on the pleadings.

I.

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed — but early enough not to delay trial." Fed. R. Civ. P.

12(c). A Rule 12(c) motion is designed to dispose of cases when the material facts are not in dispute; therefore, the court can decide the case on its merits by considering the pleadings along with any materials referenced in or attached to the pleadings, which are incorporated by reference. See Fed. R. Civ. P. 10(c), 12(c). Moreover, a court may consider "documents incorporated into the [pleadings] by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005); Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).

The same standard applies to a motion for judgment on the pleadings under Rule 12(c) as for a motion to dismiss under Rule 12(b)(6). See Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002). In analyzing a motion for a judgment on the pleadings, a court must determine whether the complaint is legally and factually sufficient. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–52 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In evaluating a motion for judgment on the pleadings, the court accepts the complaint's factual allegations as true, but need not accept a complaint's legal conclusions drawn from the facts. Iqbal, 129 S. Ct. at 1949–50; Giarratano, 521 F.3d at 302. Similarly, a court need not accept as true unwarranted inferences, unreasonable conclusions, or arguments. Giarratano, 521 F.3d at 302.

On May 7, 1993, Williams (then age 16) was convicted of armed robbery and sentenced to 240 months' imprisonment. Third Am. Compl. ¶ 6. Williams has been in the custody of the North Carolina Department of Correction ("DOC") since May 1993. Id. While incarcerated, Williams was

2

convicted of three additional crimes, resulting in sentences consecutive to his current term of imprisonment. Answer ¶ 6. Williams has a significant history of psychiatric illness that includes multiple diagnoses as well as a "history of self injury and reports of thoughts about suicide." Id. ¶ 7; see also Answer, Ex. C (July 14, 2008 psychiatric evaluation). "He has numerous stays in an inpatient psychiatric setting due to his extensive history of ingesting or inserting foreign bodies, and severe self lacerations that have required emergency medical attention." Third Am. Compl. ¶ 7. To date, Williams has committed 274 disciplinary infractions while incarcerated. N.C. Dep't of Corr., Offender Public Info., http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view& offenderID=0443630 (last visited Feb. 10, 2011). He is currently projected for release from DOC custody on June 17, 2016, at which time he will begin serving a 188 month federal sentence. Id.; Answer, Ex. A.

"[F]or approximately ten years [Williams] has been held in segregated confinement of some type, either in long-term segregation control status at Polk Correctional Institution and Central Prison, or 'therapeutic isolation' as a mental health patient in Central Prison's Mental Health Unit." Third Am. Compl. ¶ 8; see also Answer, Ex. D at 3 (Apr. 26, 2010 mental health note indicating Williams has been in segregated custody since Dec. 17, 1995).[1] Williams "is confined in a small cell whose dimensions are approximately twelve feet by six feet . . . . There is a narrow window that looks out only on the hallway outside the cell. There is a slot through which food trays and other

---

[1] Defendants refer to Williams's custody status classifications at Polk and Central as High Security Maximum Control ("Hcon") and Maximum Control ("Mcon"). Mem. Supp. Mot. J. Pleadings 12 n.2. "The Mcon control status is somewhat similar to Hcon in that it provides for restrictions on meals, exercise, movement to and from a cell, canteen, personal property, television privileges, telephone privileges, and visitation[,]" but "Mcon control status is less restrictive than Hcon." Id. at 14. Williams was on Hcon status until July 2009, and is now on Mcon status. Id. at 12.

3

materials may be passed, and through which [Williams] must extend his hands to be cuffed before the steel door is opened." Third Am. Compl. ¶ 9(a). Williams "is allowed to leave his cell for one hour on five days of each week. He is taken to shower and he is allowed recreation alone in another cell . . . . He is kept indoors constantly, and has not been allowed outdoor recreation in several years." Id. ¶ 9(b). Williams "is not allowed to eat in the dining hall with other inmates, but must eat alone in his cell, within arms' reach of his toilet." Id. ¶ 9(c). Williams "can only communicate with others nearby by shouting through the food slot or through the air vents . . . . [He] cannot have visitation except separated from his visitor by a plexiglass window, trying to hear and be heard through a thick metal mesh." Id. ¶¶ 9(d), (f). He "cannot attend religious services, cannot work, cannot attend programs, and cannot participate in rehabilitative activities" which could earn him sentence credits. Id. ¶¶ 9(e), 12. He has no access to television, and has very limited access to reading materials. Id. ¶ 9(g). He is not allowed to purchase food, candy, or other food from the inmate canteen. Id. ¶ 9(h). Williams further alleges that he has on occasion been subjected to even harsher conditions as a punishment, including being "placed in handcuffs behind his back, padlocked to a waist chain, and leg shackles . . . for four hour periods" while completely isolated; "periods of two weeks or more" where Williams is left "with only his underwear and a bare steel shelf to rest on[;]" "[m]anagement meals, which is substitution of the normal prison diet with unappetizing preparations served for punishment[;]" and "[o]ut of cell restrictions, which may be either elimination of any out of cell time, or requiring that the time be spent in full mechanical restraints." Id. ¶ 11.

Williams alleges that these conditions of confinement "aggravate [his] mental illness and depression, causing more misbehavior on his part, and additional punishments from the correctional staff[,] . . . [who] are not trained in the identification and management of the mentally ill." Id. ¶¶

4

10–11. Williams contends that "[a]s trained and experienced corrections professionals, Defendants are aware of the dangers and risks to [Williams] caused by their policies of long term confinement and the cruel and unusual conditions imposed upon him. Regardless of this knowledge, Defendants have acted with deliberate indifference to his right to be free from unnecessary suffering and mental and physical harm." Id. ¶ 14.

DOC policy provides a three-step procedure for a prisoner's classification to segregated control status, which includes reviews by the Facility Classification Committee and the Director's Classification Committee. Mem. Supp. Mot. J. Pleadings, Ex. A (DOC Policy, Chap. C, §§ .0101, .0105). Additionally, before any inmate with a formal diagnosis of serious mental disorder is assigned to Hcon status, the Director of the Division of Mental Health or his designee must approve the assignment. Id., Ex. D (DOC Policy, Chap. C, § .1701(b)(2)). In July 2008, a DOC psychologist interviewed Williams for fifteen minutes "to determine whether there are any contraindications to his continued HCON status." Answer, Ex. C (July 14, 2008 psychiatric report). The psychologist concluded that Williams "appeared to be mentally able to handle extended isolation and has not suffered any adverse effects from his current placement on HCON." Id. On January 14, 2010, a social worker interviewed Williams and concluded that "Williams is suspected of malingering thoughts of self harm to change his conditions of confinement" and "that he is easily frustrated in this setting and may be reverting to past behavioral patterns to cope with those stresses." Answer, Ex. D at 1 (Jan. 14, 2010 progress note). On April 26, 2010, Williams underwent a mental health assessment and was allowed to remain in segregated custody. Id. at 3 (Apr. 26, 2010 mental health note). On May 19, 2010, in an interview with a social worker, Williams "indicated that his mood has been good" and "rate[d] his current level of distress at 2 on a 10 point scale." Id. at 2 (May 19, 2010 progress note).

5

II.

To state a claim under 42 U.S.C. § 1983, Williams must allege: (1) that defendants "deprived him of a right secured by the Constitution and laws of the United States;" and (2) that defendants "deprived him of this constitutional right under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970) (quotations omitted); Kendall v. City of Chesapeake, 174 F.3d 437, 440 (4th Cir. 1999). The Eighth Amendment protects inmates from cruel and unusual punishment. See, e.g., Wilson v. Seiter, 501 U.S. 294, 298 (1991); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). To succeed on an Eighth Amendment claim for cruel and unusual punishment, a prisoner must establish a deprivation of a basic human need that was sufficiently serious, and that prison officials acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 298.

The United States Court of Appeals for the Fourth Circuit has addressed high-security incarceration and the Eighth Amendment. It stated:

> [T]he restrictive nature of high-security incarceration does not alone constitute cruel and unusual punishment. Sweet v. South Carolina Dept. of Corrections, 529 F.2d 854, 857 n.1 (4th Cir. 1975) (en banc) . . . . And the isolation inherent in administrative segregation or maximum custody is not itself constitutionally objectionable. Indeed, this court has noted that "isolation from companionship, restriction on intellectual stimulation[,] and prolonged inactivity, inescapable accompaniments of segregated confinement, will not render [that] confinement unconstitutional absent other illegitimate deprivations." Sweet, 529 F.2d at 861 (internal quotation marks omitted).
>
> Moreover, the indefinite duration of . . . [isolated] segregation does not render it unconstitutional . . . . [L]ength of time [in isolated segregation] is "simply one consideration among many" in the Eighth Amendment inquiry. Hutto v. Finney, 437 U.S. 678, 687 (1978); see Sweet, 529 F.2d at 861–62.

In re Long Term Admin. Segregration of Inmates Designated as Five Percenters, 174 F.3d 464, 471–72 (4th Cir. 1999) (some alterations in original).

6

The pleadings demonstrate that defendants have not violated the Eighth Amendment. Although the conditions of confinement are unpleasant, they do not deprive Williams of basic human needs. See, e.g., id.; Harrison v. Lee, No. 7:08cv00062, 2008 WL 467361, at *2 (W.D. Va. Feb. 19, 2008) (unpublished) (segregated inmate who alleged that he was permitted only one hour per week of "out of cell time" and was not allowed to shop in the commissary did not state deprivation of basic human needs); Williamson v. Anderson, No. Civ.A. 5:05-0859, 2006 WL 709209, at *13 (S.D. W. Va. Mar. 16, 2006) (unpublished) (segregated inmate's inability to "exercise, keep personal hygiene items, change clothes or shower, take part in academic and religious programs or telephone family members" did not violate Eighth Amendment). Moreover, the conditions are materially less difficult than those found actionable. See, e.g., Jones 'El v. Berge, 164 F. Supp. 2d 1096, 1099–1101 (W.D. Wis. 2001); Madrid v. Gomez, 889 F. Supp. 1146, 1228–29 (N.D. Cal. 1995). Additionally, Williams has not been denied treatment for his mental illness while in segregated custody. Cf. Hicks v. James, 255 F. App'x 744, 749 (4th Cir. 2007) (per curiam) (unpublished) (distinguishing Five Percenters where plaintiff "alleges he was placed in solitary confinement without any further attention to his psychological condition").

Here, the pleadings demonstrate that DOC staff have regularly assessed Williams's ability to handle segregated confinement. Indeed, Williams concedes that "[t]he question is not whether Defendants were deliberately indifferent at some time in the past to his serious medical needs, but rather whether they are now aware of the risks and should be compelled to take corrective action." Mem. Opp. Mot. J. Pleadings 7. Although injunctive relief is available "to prevent a substantial risk of serious injury from ripening into actual harm," Williams must show that defendants have been, and continue to be, "knowingly and unreasonably disregarding an objectively intolerable risk of harm." Farmer v. Brennan, 511 U.S. 825, 845–46 (1994); see Baze v. Rees, 553 U.S. 35, 49–50

7

(2008) ("the conditions presenting the risk must be '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers'" (quoting <u>Helling v. McKinney</u>, 509 U.S. 25, 33–35 (1993)). The pleadings demonstrate that Williams cannot make this showing.

III.

As explained above, the court GRANTS defendants' motion for judgment on the pleadings [D.E. 28]. The Clerk of Court is DIRECTED to close the case.

SO ORDERED. This 10 day of February 2011.

*[signature]*
JAMES C. DEVER III
United States District Judge